[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The factual background leading to this litigation began on January 18, 1989. On that date Enterprise Park Group, Inc. (Declarant), a Connecticut corporation which is not a party to this litigation, recorded a document entitled Declaration of Enterprise Park (Declaration) on the Land Records of the Town of Hamden. The Declaration had been executed by the President of the Declarant, Stephen Barbara, on January 13, 1989. The purpose of the execution and recording of the Declaration, which contained over eighty pages, was to create a Common Interest Community, pursuant to the provisions of Connecticut General Statutes §47-200 et seq. The common interest community was a commercial condominium development which consisted of two phases, and which was to be developed by the Declarant. Phase 1 consisted of four buildings, located on the front of the property, which contained twenty one commercial condominium units, and Phase 2 consisted of the development rights with respect to a proposed additional six buildings containing twenty five condominium units to be built on the rear of the property. The Declaration provided that the development rights could be exercised by the Declarant at any time, but not more than seven years after the recording of the initial Declaration. The Declaration also created Enterprise Park Condominium Association, Inc., which was to administer the CT Page 11759 affairs of the common interest community. On the day that the Declaration was executed, January 13, 1989, the Declarant sold a unit to the defendants Donald and Esther MePhee by warranty deed. The McPhee deed was not recorded on the land records in Hamden until after the Declaration was recorded, but on the same day, January 18, 1989. Over the next two months the Declarant sold seven units to various individual defendants by way of warranty deeds.
On July 31, 1990 the Declarant, again acting by its President Mr. Barbara, executed a "Modification of Declaration of Enterprise Park By Enterprise Park Group, Inc., The Declarant". The Modification was recorded on the Hamden Land Records on August 2, 1990. The Modification merely added a completed signatory page to the Declaration because the Declaration which was filed on January 18, 1989 inadvertently contained a signatory page without any signatures. The Declaration was not re-recorded. The Modification stated that Page I-34, the signatory page of the Declaration "does not show the due execution of said Declaration thereon, and is hereby corrected, modified replaced and/or substituted by the attached Page I-34 to reflect the due execution of said Declaration." The substituted page was the same page that was on the Declaration when it was recorded on January 18, 1989, except that the new page contained the signatures and dates showing an execution on January 13, 1989. The Modification also stated: "Intending hereby to correct the Declaration as above stated not to otherwise affect any other page or Section of said Declaration."
The Declarant sold units to the other individual defendants at some time prior to August 21, 1991. On that day title to the rights of the Declarant passed to New England Savings Bank, by virtue of a judgment of foreclosure. On January 12, 1993 New England Savings Bank, in consideration of the payment of $76,000, quit-claimed to Elm Street Builders, Inc. (Plaintiff) "those special declarant rights and declarant development rights reserved . . . in . . . the Declaration . . . recorded . . . on January 18, 1989 at Volume 977, Page 304, re-recorded for purposes of proper execution at Volume 977, Page 342, . . . Therefore, as of January 12, 1993, the plaintiff stood in the shoes of the original Declarant, Enterprise Park Group, Inc., with respect to the development rights in the Common Interest Community.
During the next three years the plaintiff did nothing in CT Page 11760 connection with exercising its development rights. This inaction, somewhat surprising since the seven year period for the exercise of the development rights was running, was claimed by Lawrence Brophy, President of the plaintiff, to be due to a "very sluggish" real estate market.
It is the plaintiffs claim that at all times it believed that the seven year development period commenced on August 2, 1990, when the Modification was recorded, and not on January 18, 1989 when the Declaration with the unsigned signatory page was recorded.
On February 1, 1996 counsel for the plaintiff wrote a letter to the defendant Joseph Levine, purportedly because the plaintiff believed that Mr. Levine was an officer of the corporate defendant, setting forth a lengthy legal argument as to why the plaintiff believed that the seven year development period did not expire until August 2, 1997, rather than on January 18, 1996, a date which had already passed. This letter was sent because, according to the letter, the plaintiff believed that the corporate defendant "and/or its members have taken the position that the development rights held by the (plaintiff) have expired . . . "The letter went on to threaten litigation against both the corporate defendant and the individual unit owners, seeking monetary damages caused by any delay or cost "occasioned by the position taken by the association" as well as multiple damages for unfair trade practices an bad faith on the part of the corporate defendant. The letter concluded by stating that "given what we understand to be the position of the Association", a response was demanded within ten days or suit would be brought against the corporate defendant and its members.
By letter dated February 1, 1996, Mr. Levine, in his capacity as secretary of the corporate defendant, responded. The letter stated in part: "We do not have any intention: at the present time of becoming involved in any litigation regarding the development rights your client has. We agree that it would benefit the Association to have your client develop, this property and create a workable relationship between us." The letter also stated that the only current interest of the corporate defendant and the unit owners was the resolution of pending litigation brought by the Town of Hamden in connection with a sewer assessment.
After receiving Mr. Levine's letter, counsel for the CT Page 11761 plaintiff then prepared a document entitled "Agreement Re: Ratification of Development Rights", which he sent to Mr. Levine on February 2, 1996, with a request that the agreement be signed by the corporate defendant. The agreement did not call for the signature of any of the individual defendants. The gist of the document was that the plaintiff and the corporate defendant stipulated that the plaintiffs development rights would expire on August 2, 1997. The cover letter again advised Mr. Levine that if the agreement was not executed by the corporate defendant, that suit would be brought which would involve all of the unit owners and which would be quite expensive. The agreement was never executed.
This litigation was commenced on April 4, 1996 in the Judicial District of Hartford/New Britain at New Britain, when the court issued an order for a hearing to be held on May 13, 1996 on the plaintiffs application for a preliminary injunction prohibiting the defendants from taking any action interfering with the plaintiffs special declarant rights and declarant development rights. The plaintiffs complaint, returnable on May 13, 1996, sought damages for a breach of certain alleged contractual obligations, for a slander of title, and for a violation of CUTPA. The complaint also requested a declaratory judgment holding that the seven year period for the exercise of the development rights shall be deemed to expire on August 2, 1997, and preliminary and permanent injunctive relief prohibiting any defendant from interfering with the plaintiffs exercise of its development rights, its securing of financing, or with the construction of units.
On May 13, 1996, the day scheduled for a hearing on the plaintiffs application for a preliminary injunction, no such hearing was held. However, on that day the court granted the defendants' motion to transfer the case to the New Haven Judicial District. Although Mr. Brophy testified that had the issue of when the seven year period expired been resolved in 1996, that the plaintiff then would have had sufficient time to exercise its development rights by August 2, 1997, the court file does not reflect any further efforts on the part of the plaintiff to request a hearing either on its application for a temporary injunction, or the request for a declaratory judgment. The pleadings were not closed until December 10, 1997.
As indicated above, the complaint requests various forms of relief. However, based on the plaintiffs claims at trial and in CT Page 11762 its post trial brief, the claim now is merely one for damages. Damages are claimed to be due because the defendants are alleged to have breached various duties owed to the plaintiff by refusing to execute the "Agreement Re: Ratification Development Rights."
It is claimed that had that document been executed, that the date for the expiration of the Development Rights would have been clarified and the plaintiff would then have been able to proceed with the project and have earned substantial profits. The document was never executed and the plaintiff claims that the "defendants' conduct" was a breach of contractual obligations, a slander of plaintiff's title, and a violation of CUTPA, resulting in substantial damage to the plaintiff.
Since it is the plaintiff's claim that the damages flow from the failure of the defendants to execute the agreement which would allegedly clarify when the development rights would expire, the decision in this case does not require the court to decide whether in fact the plaintiff's development rights expired on January 18, 1996 or on August 2, 1997. However, the court is constrained to observe, since the plaintiff stands in the shoes of the Declarant which recorded the Declaration with an unexecuted signatory page, and the subsequent modification, that in effect the plaintiff claims that it had over one and one half years in additional time beyond the seven year period set forth in the Declaration because it made a mistake when the original Declaration was filed. This is claimed to be so even though it began the exercise of the development rights several days before the recordation of January 18, 1989. Had the Modification not been filed for six years then apparently the plaintiff would be in a position to claim that it had thirteen years to exercise its development rights.
The basic issue, as set forth by the plaintiff in its post-trial brief, is whether the defendants breached various duties and obligations owed to the plaintiff. These duties and obligations are claimed to arise from three sources. Contractual duties arising from the Declaration, statutory obligations to act in good faith in the performance of their duties as members of the condominium association, and common law fiduciary obligations owed to the plaintiff as the holder of the condominium development rights. While the alleged duties and obligations are claimed to arise from three sources, the conduct on the part of the defendants which is alleged to be a violation of these duties and obligations is the failure of the defendants to execute what CT Page 11763 the plaintiff refers to as a "simple document" which it is claimed would have clarified the issue of when the period for the exercise of the development rights expired.
The court agrees with the plaintiff that the defendants did have obligations to the plaintiff. In summary, the defendants were precluded from taking any action that would interfere with, or diminish the development rights of the plaintiff. However, the court is of the opinion that the defendants had no duty to execute the document which amounted to a stipulation as to when the development rights would expire. None of the defendants had anything to do with creating the question as to when the development rights expired, if in fact there was such a question. The alleged problem was created by the original Declarant, in whose shoes the plaintiff now stands. In fact, the agreement prepared and sent to Mr. Levine by counsel for the plaintiff did not even call for the signature of any of the individual defendants. Therefore, since it is the failure to execute that agreement which is relied on by the plaintiff as constituting a breach of the duties owed by the defendants to the plaintiff, the court finds that the plaintiff has failed to prove by a fair preponderance of the evidence that the corporate defendant, or any of the individual defendants, engaged in any conduct which would constitute interference with the plaintiffs development rights, or a breach of any duty owed by the defendants to the plaintiff.
In addition to failing to prove a breach of duty, the court finds that the plaintiff has failed to prove by a fair preponderance of the evidence that if the defendants had stipulated that the seven year period did not expire until August 2, 1997, then some bank was prepared to loan sufficient funds to complete the development. The court notes that the complaint alleges that because of the uncertainties surrounding the interpretation of the Declaration and Modification that the plaintiff "may be unable to secure the requisite financing." (underlining added) The court heard no evidence from any representative of a lending institution to support the claim that funds would have been provided if the agreement had been executed. Mr. Brophy's unreliable hearsay evidence as to what a bank was prepared to do is not persuasive. Therefore, the plaintiff has failed to prove that any conduct on the part of the defendants was the proximate cause of the failure of the plaintiff to complete the condominium development. CT Page 11764
As far as damages are concerned the plaintiff claims that its compensatory damages are $500,000. The total evidence in support of this claim came by way of testimony from Mr. Brophy in an answer to one question, the answer occupying seven and one half lines in the transcript. This evidence is insufficient for the court to find that the plaintiff has proven any damages by a fair preponderance of the evidence.
The failure of the defendants to sign the clarification agreement is also claimed to be the conduct which is the basis for the slander of title alleged in the second count and the CUTPA violation alleged in the third count.
One of the essential elements of a slander of title claim is that the defendants made false statements with malice in disparagement of the plaintiffs title. The plaintiff has failed to prove this essential element by a fair preponderance of the evidence.
With respect to the third count alleging a violation of CUTPA, the plaintiff claims that the conduct of the defendants in not signing the clarification agreement constituted an "unfair practice" and thus violated CUTPA. The court does not agree that this conduct rises to the level of a CUTPA violation.
Of course, the failure of the plaintiff to prove that had the clarification agreement been executed the necessary funding would have become available, as well as a failure to prove damages, both discussed earlier, are additional reasons why the plaintiff has failed to prove the allegations of the second and third counts.
Accordingly, for the reasons above stated, the court finds that the plaintiff has failed to prove by a fair preponderance of the evidence any of the claims alleged in the complaint, and judgment may enter in favor of all defendants on all counts.
Hadden, J.T.R.